FILED
2013 Jan-28 PM 04:29
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**EASTERN DIVISION**

**GRACE ELLIS, as personal representative of the estate of Regina Ezell,**

**Plaintiff,**

**v.**

**CITY OF ANNISTON, ALABAMA,**

**Defendant.**

**Case No.: 1:12-CV-1999-VEH**

---

## MEMORANDUM OPINION AND ORDER

This lawsuit was initiated by Plaintiff, the duly appointed representative of the Estate of Regina Ezell, deceased, on May 29, 2012. (Complaint, doc. 1). Ms. Ezell died on September 19, 2010, while she was incarcerated as a pretrial detainee in the Anniston City Jail. (*Id*.). Plaintiff alleges that the City of Anniston and certain of its employees were deliberately indifferent to Ms. Ezell's serious medical needs, in violation of her rights as a pretrial detainee under the Fourteenth Amendment to the United States Constitution, by and through 42 U.S.C. § 1983, and Alabama law. (*Id*.).

Now pending before the court is the Motion for Protective Order ("Motion",

doc. 21) filed by the City of Anniston ("City").[1] There are two categories of disclosures that the City is willing to produce, but only subject to an order from this court limiting disclosure to Plaintiff's "legal team." Those categories are: (1) the results of any City investigation of Ms. Ezell's death, which the City claims are due to be protected under the "self-critical analysis" privilege; and (2) documents "reflecting or discussing the need for or the use or possible use of video monitoring and/or recording equipment at an Anniston Jail facility" and "diagrams of the jail buildings," which the City claims are privileged as "jail security materials." (*Id.*). Plaintiff initially responded that: (1) the City has not shown good cause for the requested limitation on Plaintiff's use of these items; (2) any interest in non-disclosure is outweighed by the harm to Plaintiff, as the limitation proposed by the City would significantly hamper Plaintiff's ability to interview and depose witnesses; and (3) by its prior production, the City has waived any right to the protective order it now seeks. (Plaintiff's Response, doc. 23).[2] The court finds that, for the reasons

---

[1] The Motion has been fully briefed (docs. 21, 23, 31, and 35).

[2] Plaintiff also objected that the City had failed to provide a privilege log. The court ordered the City to do so. (Order, doc. 30). The City then filed a Response (doc. 31), to which it attached a privilege log. As to all reports, diagrams, or pictures listed on the privilege log, the City claimed the following privileges: self-critical analysis; attorney-client privilege; and privileged because prepared in anticipation of litigation. As to video from the Jail for the eight days that Ms. Ezell was incarcerated, including the date she died, the City's privilege log seems not to claim a privilege because it instead asserts that production would be "massive/unduly burdensome." However, in its pleading (doc. 31), the City clarifies that, as to that video, it is

set out below, the Motion is due to be **DENIED**.

## I. PRIVILEGE

The Federal Rules of Civil Procedure allow parties to

> [o]btain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(I), (ii), and (iii).

FED.R.CIV.P. 26(b)(1) (emphasis supplied). The privileges noted in Rule 26(b)(1) are encompassed in Rule 501 of the Federal Rules of Evidence. Rule 501 provides:

> The common law — as interpreted by United States courts in the light of reason and experience — governs a claim of privilege unless any of the following provides otherwise:
>
> the United States Constitution;
> a federal statute; or
> rules prescribed by the Supreme Court.
>
> But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision.

FED.R.EVID. 501.

The Conference Committee Notes to Rule 501, as amended effective December

---

asserting "privilege, not undue burden." (Doc. 31).

1, 2011, set out the tension that can exist between federal and state law regarding privilege. Ultimately, however, Rule 501's changes were"stylistic" only. "There is no intent to change any result in any ruling on evidence admissibility." Committee Notes to Rule 501.

> Rule 501 deals with the privilege of a witness not to testify. Both the House and Senate bills provide that federal privilege law applies in criminal cases. In civil actions and proceedings, the House bill provides that state privilege law applies "to an element of a claim or defense as to which State law supplies the rule of decision." The Senate bill provides that "in civil actions and proceedings arising under 28 U.S.C. §1332 or 28 U.S.C. §1335, or between citizens of different States and removed under 28 U.S.C. §1441(b) the privilege of a witness, person, government, State or political subdivision thereof is determined in accordance with State law, unless with respect to the particular claim or defense, Federal law supplies the rule of decision."
>
> The wording of the House and Senate bills differs in the treatment of civil actions and proceedings. The rule in the House bill applies to evidence that relates to "an element of a claim or defense." If an item of proof tends to support or defeat a claim or defense, or an element of a claim or defense, and if state law supplies the rule of decision for that claim or defense, then state privilege law applies to that item of proof.
>
> Under the provision in the House bill, therefore, state privilege law will usually apply in diversity cases. There may be diversity cases, however, where a claim or defense is based upon federal law. In such instances, Federal privilege law will apply to evidence relevant to the federal claim or defense. *See Sola Electric Co. v. Jefferson Electric Co.*, 317 U.S. 173 (1942).
>
> In nondiversity jurisdiction civil cases, federal privilege law will generally apply. In those situations where a federal court adopts or incorporates state law to fill interstices or gaps in federal statutory

phrases, the court generally will apply federal privilege law. As Justice Jackson has said:

> A federal court sitting in a non-diversity case such as this does not sit as a local tribunal. In some cases it may see fit for special reasons to give the law of a particular state highly persuasive or even controlling effect, but in the last analysis its decision turns upon the law of the United States, not that of any state.

*D'Oench, Duhme & Co. v. Federal Deposit Insurance Corp.*, 315 U.S. 447, 471 (1942) (Jackson, J., concurring). When a federal court chooses to absorb state law, it is applying the state law as a matter of federal common law. Thus, state law does not supply the rule of decision (even though the federal court may apply a rule derived from state decisions), and state privilege law would not apply. *See* C. A. Wright, Federal Courts 251–252 (2d ed. 1970); *Holmberg v. Armbrecht*, 327 U.S. 392 (1946); *DeSylva v. Ballentine*, 351 U.S. 570, 581 (1956); 9 Wright & Miller, Federal Rules and Procedure §2408.

In civil actions and proceedings, where the rule of decision as to a claim or defense or as to an element of a claim or defense is supplied by state law, the House provision requires that state privilege law apply.

The Conference adopts the House provision.  House Report No. 93-1597.

Committee Notes on Rules —2011 Amendment.

## II.   PROTECTIVE ORDERS

The decision to enter a protective order is within the court's discretion and does not depend on a legal privilege. *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1548 (11th Cir.1985). Rule 26(c) provides that upon a showing of good cause, a court "may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."

> The party seeking a protective order has the burden to demonstrate good cause, and must make "a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements" supporting the need for a protective order. *U.S. v. Garrett*, 571 F.2d 1323, 1326 n. 3 (5th Cir.1978).

*Auto-Owners Ins. Co. v. Se. Floating Docks, Inc.*, 231 F.R.D. 426, 429-430 (M.D.Fla. 2005).

## III. ANALYSIS[3]

The City has invoked two "privileges" in support of its Motion. The court addresses each of those privileges below.[4]

### A. The "Self-Critical Analysis" Privilege

The City argues that everything on its privilege log, except the "diagrams of the jail buildings" and the jail video during the eight days that Ms. Ezell was detained, is "subject to self-critical law enforcement privilege." The City states that

---

[3] The court recognizes that Plaintiff's claims and the City's defenses both invoke both federal and state law. However, the parties have cited only federal law; the court therefore has limited its analysis to federal law. Given the nature of this case, the court anticipates that federal law would be controlling in any event.

[4] To the extent that the Privilege Log that is attached to the City's Response to Order (doc. 35) differs from or goes beyond the arguments asserted in that Response to Order, the court declines to consider such different or additional arguments on the basis that they either have been disavowed by the City ("Although the privilege log states that the Jail video is 'Massive/Unduly Burdensome,' it also states that it "will be made available for Plaintiff to review subject to a protective order (based on grounds of privilege, not undue burden) (doc. 35) (emphasis supplied)) or that the argument is underdeveloped. An issue must be "fairly presented" in order to trigger consideration, and a glancing reference without discussion or legal authority does not meet that standard. *Smith v. Secretary, Department of Corrections*, 572 F.3d 1327, 1352 (11th Cir.2009).

> While the federal courts have almost universally *rejected* a wholesale privilege, they have just as universally held that law enforcement agencies are entitled to a *protective order* that precludes an injured plaintiff from disseminating any part of the investigation outside her legal team. *Montoya v. Sheldon*, 2012 WL 2383822 (D. N.M. 2012); *Dorsett v. County of Nassau*, 762 F.Supp.2d 500, 537, *aff'd*, 800 F.Supp.2d 453 (E.D.N.Y. 2011); *Foley v. Boag*, 2006 WL 6830911, **2-3 (D. N.J 2006); *Soto v. City of Concord*, 162 F.R.D. 603, 614 (N.D. Cal. 1995); *Kelly v. City of San Jose*, 114 F.R.D. 653, 662, 666, 671 (N.D. Cal. 1987); *Chism v. County of San Bernardino*, 159 F.R.D. 531, 534-535 (C.D. Cal.1994); *Hampton v. City of San Diego*, 147 F.R.D. 227, 231 (S.D. Cal. 1993); *Miller v. Pancucci*, 141 F.R.D. 292, 301 (C.D. Cal. 1992). In other words, while the policy reasons underlying the privilege have [been] found to be insufficient to prevent a plaintiff from discovering the contents of an internal affairs investigation, those same policy reasons [universally] have been held to be sufficient basis for entry of a protective order.

(Motion, doc. 21, p.4)(emphasis by italics in original; emphasis by underlining supplied)(alteration in brackets supplied).

This is a very strong statement. In it, the City tells this court that all federal courts that have considered the self-critical analysis privilege have required the contents of internal affairs investigations by law enforcement to be disclosed to plaintiffs, but only pursuant to a protective order. In the context of the protective order sought here, that is, one limited to the Plaintiff's "legal team," the undersigned expected the protective orders in the cases cited by the City to be similarly limited, especially given Plaintiff's repeated argument that she must be able to show the documents to witnesses in order to depose them and to otherwise discover the facts

of this case.

The undersigned has found very little, if anything, that is both discretionary and universal in the law. Naturally, the court's interest was piqued. Unfortunately, the cases cited by the City show that the City has over-stated their holdings. Indeed, these cases persuade the undersigned that the City is not only not entitled to a protective order as to these investigatory materials, but that public policy weighs against such an order in this case.

Specifically, none of the cited cases set out above involve a law enforcement agency-defendant that (1) successfully cites the self-critical analysis privilege (2) in order to obtain a protective order limiting disclosure (3) to the plaintiff's legal team. Some of the cases do not involve the self-critical analysis privilege at all. Others do, but the court decided to issue a protective order that is not as restrictive as the one sought here. There are two cases where the court appears to limit disclosure of the requested documents to "the plaintiff's lawyer and his consultant and staffs." But the documents protected were internal police department documents like training manuals and guidelines that illustrated law enforcement techniques in detail. They were not internal investigative reports and/or witness statements specific to an underlying incident, as is the case here. Also, the court in those cases justified the limited protective order on the basis of the "official information" privilege, rather than the

"self-critical analysis" privilege relied on by the City.

Out of the eight cases cited by the City, the self-critical analysis privilege is only claimed by the defendants in *Soto* and in *Hampton*; it is exclusively addressed by the court at any length in the former. And, in *Soto*, the court expressed deep skepticism about the applicability of the privilege to the law enforcement context. It contested the notion, advanced here by the City, that law enforcement officials would be less candid and cooperative in post-incident investigations if they knew that the fruits of such investigations would be openly disclosed. The *Soto* court did leave open the possibility of a protective order, although it did not state the terms of any such possible order.

Neither *Hampton* nor *Montoya* involved a privilege claim whatsoever. And the remaining five decisions cited by the City involve the "official information" privilege, not the "self-critical law enforcement" privilege. Even in the cases — *Montoya*, *Dorsett*, and *Foley* --- in which protective orders were issued, those orders limited disclosure to the parties involved in the lawsuit, thus permitting disclosure to third-party witnesses, experts, and support staff – all individuals beyond the Plaintiff's "legal team," which is the limitation sought by the City. The courts in *Chism* and *Hampton* did not issue protective orders at all, much less define what their terms might be. Likewise, the court did not issue such an order in *Miller*; instead it

required production of the requested documents seemingly without any limitations on further disclosure. In *Kelly*, the court issued a protective order that limited disclosure of the documents at issue to "lawyers and their consultants and staffs." However, it is unclear whether the court in *Kelly* meant this order to apply to the types of documents at issue in the City's Motion – post-incident investigation records and accompanying witness statements. The *Kelly* court appeared more focused on preventing exposure of law enforcement policy documents and guidelines that described internal procedures. General dissemination of such documents – even to possible witnesses – could potentially compromise legitimate law enforcement interests. But such a rationale does not apply to post-incident investigation records. Such documents simply do not implicate sensitive government interests in the same manner as policy documents and guidelines – certainly not to the degree that they cannot be shown to or referenced by witnesses in a deposition or trial setting.

For all these reasons, the court declines to enter a protective order as to these documents and things on the basis of the "self-critical law enforcement" privilege.

**B. The "Jail Security" Privilege**

The City states that, "as for the jail security materials" (presumably the diagrams of jail buildings and, for purposes of completeness only, the jail videos identified on the City's privilege log), "it is obvious that jail security procedures and

maps of the jail, if allowed to get in the wrong hands, not only jeopardize[] the security of the facility but also unnecessarily endanger[] the employees who work there, the detainees and inmates incarcerated there, and the general public who live and work in the community outside the facility." (Motion, doc. 21, pp. 4-5).

However, it is not at all clear to the undersigned that diagrams of the jail, or the eight days of video, are the types of information that the cases cited by the City (in this portion of its Motion) are intended to protect. As the Plaintiff points out, anyone who is detained in the jail sees it. Although conceivably there are areas that are "secret," or at least not widely known, the City has failed to state, much less demonstrate, that that is the case as to any portion of the jail or the videos, and certainly not as to them in their entireties. The City has simply failed to carry its burden. Therefore, the court declines to enter a protective order as to these materials based on the asserted "jail security" privilege.

## IV.   CONCLUSION

Accordingly, the City Motion for Protective Order (doc. 21) is due to be, and hereby is, **DENIED**. The City is hereby **ORDERED** to produce to Plaintiff, within twenty-one (21) days of the date of this Order, all the things listed on its privilege log attached to doc. 31. Relatedly, any item not listed on the City's privilege log and which is responsive to Plaintiff's Request for Production is hereby **ORDERED** to be

produced within twenty-one (21) days of the date of this Order. *See* Order, doc. 30. ("Defendant's motion, as well as any assertion of privilege by it as to any document or thing, will thus be denied (or deemed waived) in the absence of a privilege log that satisfies the requirements of the Federal Rules of Civil Procedure.")

**DONE** and **ORDERED** this the 28th day of January, 2013.

**VIRGINIA EMERSON HOPKINS**
United States District Judge